# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JORDAN WALSTON, individually and on behalf of her infant child, L.W. | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | Case No. 1:22-cv-10002-LAK-JW |
| | : | |
| CITY OF NEW YORK; MICAELLE LAFONTANT; IRENE RENDON; SHARON FAULK JEAN-PIERRE; JANE DOE; MONTEFIORE MEDICAL CENTER; and CARMEN DELEON, | : : : : : | |
| | : | |
| Defendants. | : | |

# DEFENDANTS MONTEFIORE MEDICAL CENTER AND CARMEN DELEON'S MEMORANDUM OF LAW IN SUPPORT OF <u>MOTION TO DISMISS</u>

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ALLEGATIONS ............................................................................................................. 2

LEGAL STANDARDS ................................................................................................... 4

DISCUSSON ................................................................................................................. 5

    I.   Plaintiffs Has Not Alleged a §1983 Claim Against Montefiore and Deleon ...................... 5

        A.   Defendants Were Not State Actors Nor  Did They Act "Under Color of State Law" ............................................................................................................................... 5

        1.   The compulsion test fails. ................................................................................. 6

        2.   The state action test fails. ................................................................................. 7

        3.   The public function test fails. ............................................................................ 8

        B.   Plaintiffs Do Not Adequately Plead Deprivation of a Constitutional Right ........... 9

        1.   Plaintiffs do not sufficiently allege violation of a civil right by detainment. ....... 10

        2.   A change in discharge does not amount to a civil rights violation. ...................... 11

    II.   Deleon is not Subject to Liability for the §1983 Claim Because of Qualified Immunity and Montefiore Cannot Be Held Responsible Under a Theory of *Respondeat Superior* for Deleon's Alleged Conduct ............................................................................................. 12

    III.   Plaintiffs' False Imprisonment Claim is Untimely and Should Be Dismissed ................. 14

    IV.   The State Law Claims Should Be Dismissed ................................................................ 15

        A.   Plaintiffs' Remaining State Law Claims Are Duplicative, Lack Merit And Should be Dismissed ................................................................................................................ 15

        1.   The negligence claims should be dismissed. ...................................................... 15

        2.   The interference with child custody claim should be dismissed ........................... 17

        B.   The Court Should Decline To Exercise Pendent Jurisdiction Over the State Law Claims ...................................................................................................................... 17

CONCLUSION ............................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...............................................2, 4, 10

*Brown v. City of New York*,
   No. 09 CIV 6834, 2010 WL 3565171 (S.D.N.Y. Mar. 2, 2010) ...........................................13

*Calcano v. Vineyard Vines, LLC*,
   No. 19 CIV. 11228, 2020 WL 3318100 (S.D.N.Y. June 18, 2020) (Schofield,
   J.) ..........................................................................................................................................11

*Cinotti v. Adelman*,
   709 F. App'x 39 (2d Cir. 2017) ............................................................................................5

*Citizens United v. Schneiderman*,
   882 F.3d 374 (2d Cir. 2018) ................................................................................................10

*Cuoco v. Moritsugu*,
   222 F.3d 99 (2d Cir. 2000) ..................................................................................................13

*Doe v. Alsaud*,
   224 F. Supp. 3d 286 (S.D.N.Y. 2016) (Sweet, J.) ...............................................................14

*Doe v. Harrison*,
   254 F. Supp. 2d 338 (S.D.N.Y. 2003) (Stein, J.) ................................................................12

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
   387 F. Supp. 2d 265 (S.D.N.Y. 2004) (Sweet, J.) ..............................................................9

*In re Elevator Antitrust Litig.*,
   502 F.3d 47 (2d Cir. 2007) (per curiam) ............................................................................4

*Fabrikant v. French*,
   691 F.3d 193 (2d Cir. 2012) ................................................................................................5

*Fisk v. Letterman*,
   401 F. Supp. 2d 362 (S.D.N.Y. 2005) (Marrero, J.) ...........................................................14

*Geiss v. Weinstein Co. Holdings LLC*,
   383 F. Supp. 3d 156 (S.D.N.Y. 2019) (Hellersetin, J.) .......................................................14

*Grullon v. City of New Haven*,
   720 F.3d 133 (2d Cir. 2013)..................................................................................13

*Ilkowitz v. Durand*,
   No. 17 CIV. 773, 2018 WL 1595987 (S.D.N.Y. Mar. 27, 2018) (Gardephe, J.) ...................16

*Johnson v. City of New York*,
   No. 20CV3083GBDBCM, 2021 WL 4896477 (S.D.N.Y. Aug. 23, 2021) ............................5

*Kaplan v. Cnty. of Orange*,
   528 F. Supp. 3d 141 (S.D.N.Y. 2021) (Karas, J.) ..............................................6, 12

*Kia P. v. McIntyre*,
   235 F.3d 749 (2d Cir. 2000)...........................................................................7, 8, 11

*Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*,
   464 F.3d 255 (2d Cir. 2006).................................................................................17

*Kolari v. New York-Presbyterian Hosp.*,
   455 F.3d 118 (2d Cir. 2006).................................................................................17

*Kurtz v. Hansell*,
   No. 20 CIV. 3401, 2021 WL 1143619 (S.D.N.Y. Mar. 24, 2021) (Engelmayer,
   J.)........................................................................................................6, 8

*Logan v. St. Luke's–Roosevelt Hospital Center*,
   636 F. Supp. 226 (S.D.N.Y.1986) (Sweet, J.) *aff'd*, 805 F.2d 391 (2d Cir.
   1986) ........................................................................................................7

*Maier v. Phillips*,
   205 F.3d 1323 (2d Cir. 2000).................................................................................9

*McGugan v. Aldana-Bernier*,
   752 F.3d 224 (2d Cir. 2014)................................................................................12

*Meimaris v. Royce*,
   No. 19-3339-CV, 2021 WL 5170725 (2d Cir. Nov. 8, 2021)...................................4

*Michael E. Jones M.D., P.C. v. UnitedHealth Grp., Inc.*,
   No. 19-CV-7972, 2020 WL 4895675 (S.D.N.Y. Aug. 19, 2020) (Caproni, J.)...................10

*Mitchell v. Home*,
   377 F. Supp. 2d 361 (S.D.N.Y. 2005) (McMahon, J.)...........................................14

*Nieblas-Love v. New York City Hous. Auth.*,
   165 F. Supp. 3d 51 (S.D.N.Y. 2016) (Furman, J.)................................................16

*Perez v. Sugarman,*
   499 F.2d 761 (2d Cir. 1974)..................................................................................7

*Premium Sports, Inc. v. Mendes,*
   No. 17CV1309PKCCLP, 2018 WL 2078488 (E.D.N.Y. Mar. 1, 2018) ................................10

*Rojas v. Alexander's Dep't Store, Inc.,*
   924 F.2d 406 (2d Cir. 1990)................................................................................14

*Romer v. Morgenthau,*
   119 F. Supp. 2d 346 (S.D.N.Y. 2000) (Marrero, J.) .................................................9

*Ruffler v. Phelps Mem'l Hosp.,*
   453 F. Supp. 1062 (S.D.N.Y. 1978) (Gagliardi, J.) .................................................8

*State Blum v. Yaretsky,*
   457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)............................................8

*Storck v. Suffolk Cnty. Dep't of Soc. Servs.,*
   62 F. Supp. 2d 927 (E.D.N.Y. 1999) .....................................................................6

*Sussman Sales Co., Inc. v. VWR Int'l, LLC,*
   No. 20 CIV. 2869, 2021 WL 6065760 (S.D.N.Y. Dec. 21, 2021) (Failla, J.) ......................15

*Sybalski v. Indep. Grp. Home Living Program, Inc.,*
   546 F.3d 255 (2d Cir. 2008)................................................................................8

*Thomas v. Beth Israel Hosp. Inc.* ..........................................................................6
   710 F. Supp. 935, 940-41 (S.D.N.Y. 1989)

*Zalaski v. City of Hartford,*
   723 F.3d 382 (2d Cir. 2013)................................................................................12

**State Cases**

*Kempster v. Child Protective Servs. of Dep't of Soc. Servs. of Suffolk Cnty.,*
   130 A.D.2d 623 (2d Dept. 1987) .........................................................................12

*Rine v. Chase,*
   309 A.D.2d 796 (2d Dept 2003) .........................................................................12

*Sager v. Rochester Gen. Hosp.,*
   169 Misc. 2d 643, 647 N.Y.S.2d 408 (Sup. Ct. Monroe County 1996) .........................17

**Federal Statutes**

28 U.S.C. § 1367(c)(3)........................................................................................17

42 U.S.C. §1983...................................................................................... *passim*

Fed. R. Civ. P. 8(a) ................................................................................4, 9

Fed. R. Civ. P. 12(b)(6)....................................................................1, 2, 4

**State Statutes and Regulations**

CPLR § 215(3)........................................................................................2

New York Social Services Law §413 ...................................................12

New York Social Services Law §419 .......................................... *passim*

New York Social Services Law §420 .....................................................2

State Child Protective Services Act (Social Services Law Title 6, § 411 *et seq.*) ........................6

**Other Authorities**

U.S. Const. amend. IV ...........................................................................8

U.S. Const. amend. XIV, Section 1 .......................................................7

Executive Order 202.8 .........................................................................15

Defendants Montefiore Medical Center ("Montefiore") and Carmen Deleon ("Deleon") (collectively, "Defendants") respectfully submit this Memorandum of Law in support of their motion to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6).

## **INTRODUCTION**

Plaintiffs fail to plead a claim upon which relief can be granted for violations of federal civil rights laws stemming from a childbirth at Montefiore. The Constitution and 42 U.S.C. §1983 apply only to state actors. Defendants are not state actors and are not liable under these laws. Courts in the Second Circuit and elsewhere routinely hold that social workers do not become state actors when they report suspected child abuse as required by state law. Additionally, Defendants' alleged conduct does not satisfy any of the tests that can turn private activity into activity pursued under the color of state law: Defendants did not undertake any conduct typically reserved for the State; Defendants did not act in concert with state actors; and Defendants were not compelled to undertake any alleged conduct pursuant to the coercive power of the State.

Plaintiffs' failure to plead specific facts that Defendants deprived Plaintiffs of a constitutionally protected right is another reason the Complaint cannot survive.

This first cause of action must also be dismissed because, as a mandatory reporter under New York law, Deleon is statutorily immune from liability for any alleged report of suspected child abuse made to ACS pursuant to New York Social Services Law §419. Social workers are responsible for ensuring the safety of children when there is a suspicion of maltreatment. As such, New York law mandates these professionals to report instances of suspected maltreatment to government authorities. Recognizing the critical importance of protecting vulnerable life, "mandated reporters" must report cases of suspected maltreatment when they have a reasonable belief to suspect that a child has been maltreated. They need not be certain. To ensure mandated

1

reporters are not deterred from reporting suspected instances of abuse without fear of lawsuits like this one, New York Social Services Law §419 provides that mandated reporters are immune from liability for good faith reporting, even if it ultimately is determined that abuse did not occur. If they fail to report any suspected maltreatment, mandated reporters face criminal liability under §420.

The Complaint describes a lawful instance of reporting that is mandated by the state, not one based on discriminatory motives, as Plaintiffs baselessly allege. To allege a civil action for deprivation of rights, Plaintiffs rely on legal conclusions unmoored by concrete factual allegations. Plaintiffs fail to identify any facts supporting their claims or an inference of discrimination. Plaintiffs' allegations do not in fact describe a deprivation of constitutional rights by Defendants.

The false imprisonment claim must be dismissed, as a matter of law, as time barred pursuant to CPLR § 215(3).

The common law claims of Negligence, Negligent Infliction of Emotional Distress and Interference with Child Custody should be dismissed as they are inherently duplicative of the federal cause of action that fails. As such, the Court should decline its pendent jurisdiction, as the proper forum to argue the substance of any remaining common law claims is state court.

## **ALLEGATIONS**

The following facts are drawn from Plaintiffs' Complaint. Dkt No. 1 ("Compl."). These facts are not conceded and are assumed to be true solely for purposes of this Rule 12(b)(6) motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). The relevant facts will be summarized only to the extent they are applicable to Defendants.

Montefiore Medical Center is a not-for-profit hospital located in the Bronx, New York. Compl. ¶ 20, 22. Plaintiff Jordin Walston ("Walston") "was a minor child in foster care" until

2019. *Id.* ¶ 28, 36. She "had mental health problems when she entered foster care in 2013 and for a few years thereafter." *Id.* ¶ 35. "At some point prior to 2016 … [Walston] was hospitalized for her mental health problems and …[was] treated with medication and psychotherapy." *Id.* ¶ 38.

Walston became pregnant with Infant-Plaintiff L.W. ("L.W.") in early 2019. *Id.* ¶ 25. In late 2019, Walston went into labor and was taken to Montefiore. *Id.* ¶ 47. L.W. was born on November 27, 2019. *See generally* ¶¶ 50, 65. Walston and L.W. remained at Montefiore for the next two days. *Id.* ¶ 48. On the third day of L.W.'s life, November 29, 2019, Deleon, a social worker and employee of Montefiore, visited Walston in her hospital room and "accused [Walston] of being aggressive and defensive." *See id.* ¶¶ 20, 50, 53. Shortly after Deleon and Walston's interaction, "Deleon called New York State Central Register of Child Abuse and Maltreatment and reported that [Walston] had maltreated or endangered [L.W.]." *Id.* ¶ 55. The report was transmitted to the Administration for Children's Services ("ACS") for an investigation. *Id.* ¶ 57. After the call to New York State Central Register of Child Abuse and Maltreatment, Defendants allegedly removed L.W. from Walston's custody. *Id.* ¶ 58. Later in the afternoon of November 29, ACS Defendants arrived at Montefiore and interviewed Walston. *Id.* ¶¶ 19, 65. Based on their interview of Walston, ACS took L.W. into the custody of Defendant City of New York. *Id.* ¶¶ 19, 71. That evening, Defendant Lafontant took L.W. from Walston's arms, *id.* ¶ 72, and told Walston she would be unable to see L.W. until the following Monday. *Id.* ¶ 74. Defendants Lafontant and Doe removed L.W. from Montefiore. *Id.* ¶77. Once L.W. was removed from Montefiore's premises by Lafontant and Doe, Montefiore and Deleon had no further interaction with Walston or L.W. *See generally* Compl.

3

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) (*quoting Twombly,* 550 U.S. at 570, 127 S. Ct. at 1974). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A complaint must contain more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *accord* Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965 (footnote omitted) (citation omitted). The determination of whether a plaintiff has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam) (*quoting Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).

"A statute of limitations defense can be decided on a Rule 12(b)(6) motion 'if the defense appears on the face of the complaint.'" *Meimaris v. Royce*, No. 19-3339-CV, 2021 WL 5170725,

at *3 (2d Cir. Nov. 8, 2021) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)).

## DISCUSSON

### I.    Plaintiffs Has Not Alleged a §1983 Claim Against Montefiore and Deleon

To state a claim under §1983, a plaintiff must allege that defendants violated plaintiff's Constitutional or federal rights while acting under the color of state law. 42 U. S.C. §1983; *Cinotti v. Adelman*, 709 F. App'x 39, 40 (2d Cir. 2017) (summary order).  Plaintiffs fail to state a claim because Defendants were not state actors, nor did they act under color of state law.  Plaintiffs also fail to plausibly allege Defendants deprived them of a constitutional right.  Accordingly, the claim must be dismissed.

### A.    Defendants Were Not State Actors Nor Did They Act "Under Color of State Law"

Three main tests have emerged to determine if a private entity acts under color of state law:

(1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant*, 691 F.3d at 207 (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S. Ct. 2764, 2770, 73 L. Ed. 2d 418 (1982)).  Courts in this district have routinely held that private hospitals "are generally not proper §1983 defendants because they do not act under color of state law." *Johnson v. City of New York*, No. 20CV3083GBDBCM, 2021 WL 4896477, at *9 (S.D.N.Y. Aug. 23, 2021) (Moses, M.J.), *report and recommendation adopted*, No. 20CIV3083, 2021 WL

4479384 (S.D.N.Y. Sept. 30, 2021) (Daniels, J.) (quoting *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) (summary order)).

Courts in this Circuit have applied these principles and held, with near uniformity, that merely reporting suspected child abuse to government authorities is not state action. *Kurtz v. Hansell*, No. 20 CIV. 3401, 2021 WL 1143619, at *9 (S.D.N.Y. Mar. 24, 2021) (Engelmayer, J.) (collecting cases); *Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 942 (E.D.N.Y. 1999) ("The mere fact that the defendant doctors reported their suspicions of child abuse pursuant to a state statute does not render the defendant doctors at [private hospital] state actors"). Similarly, in *Thomas v. Beth Israel Hosp. Inc.*, this court held that a private hospital did not act under color of state law for "complying with the New York State Child Protective Services Act (Social Services Law Title 6, § 411 *et seq.*) by reporting suspected child abuse" nor did its conduct transform into state action "for §1983 purposes by the fact that §419 of the New York Social Services Law provides [private hospital] statutory immunity for reporting suspected cases of child abuse." 710 F. Supp. 935, 940-41 (S.D.N.Y. 1989) (Sweet, J.). Deleon's reporting to ACS did not constitute state action and cannot sustain the §1983 claim.

       1.     The compulsion test fails.

"Under the compulsion test, 'a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Kaplan v. Cnty. of Orange*, 528 F. Supp. 3d 141, 153–54 (S.D.N.Y. 2021) (Karas, J.) (*quoting Doe v. Rosenberg*, 996 F. Supp. 343, 348–49 (S.D.N.Y. 1998) (Sweet, J.)). The Complaint does not pass muster under the compulsion test by alleging Defendants reported child mistreatment. *See Storck* and *Thomas*, *supra*, § I.A. Doing so was meeting a statutory obligation in place to protect children - not evidence

that the State exercised coercive powers over private entities to become an extension of the state's arm. Plaintiffs failed to plead that Defendants acted pursuant to any state-sponsored policies or practices. The compulsion test is not met.

       2.      The state action test fails.

The Second Circuit has conclusively held that a private non-profit hospital, although licensed and regulated by the state, does not have a sufficiently close nexus with the state to constitute 'state action' for purposes of the Fourteenth Amendment. *Logan v. St. Luke's–Roosevelt Hospital Center*, 636 F. Supp. 226, 236 (S.D.N.Y.1986) (Sweet, J.) *aff'd*, 805 F.2d 391 (2d Cir. 1986). When private hospitals provide medical care and services to patients, they are acting in a private capacity and any "misdeeds the Hospital…may have committed in providing that care… are not redressable under §1983." *Kia P. v. McIntyre*, 235 F.3d 749, 756 (2d Cir. 2000). While a hospital's private conduct "may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action," such conduct was not alleged here. *Perez v. Sugarman*, 499 F.2d 761, 764 (2d Cir. 1974). When medical treatment of a patient has concluded but the hospital makes a good faith investigation into suspected child neglect, the hospital's actions could constitute "part of the reporting and enforcement machinery for … a government agency charged with detection and prevention of child abuse and neglect," *Kia P.*, 235 F.3d at 757, and as such *may* expose the hospital and its employees to §1983 liability. The facts as alleged here, however, are insufficient to expose Defendants to §1983 liability for any purported detainment of L.W.

In *Kia P.* after the child's medical treatment terminated she was medically cleared for discharge. 235 F.3d at 756. In light of the mother's drug history and the doctor's own observations, pursuant to hospital policy and the law, the hospital put a hold on the infant's release

after it made a report and awaited action by CWA.  *Id.* at 756-57. The infant in *Kia P.* was ultimately released to the mother 24-48 hours after she had been detained while the hospital awaited instructions from CWA.  *Id*. at 757.  The Second Circuit found that the hospital's "brief" retention of the infant while awaiting a child maltreatment investigation was "reasonable" and did not violate the Fourth Amendment.  *Id*. at 762-63.

Plaintiffs fail to allege any time frame that Defendants allegedly detained L.W. Any detainment, even if plead, could have only been from the time between Walston's interaction with Deleon and later in the afternoon, when ACS arrived.  This would be mere hours and certainly less than the day to two days in *Kia. P.  See Kurtz,* 2021 WL 1143619, at *11 (noting that infant's "brief" overnight stay at Mt. Sinai pending ACS's investigation after doctor reported suspected abuse and neglect did not convert doctor's actions into state action).

3.    The public function test fails.

Under the "public function test" state action occurs for §1983 purposes when a private actor performs a function that is traditionally within the exclusive prerogative of the State.  *Blum v. Yaretsky*, 457 U.S. 991, 1005, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982).  "[T]he provision of general medical services has traditionally been 'largely in the private domain' and therefore could not be considered a public function." *Ruffler v. Phelps Mem'l Hosp.*, 453 F. Supp. 1062, 1069 (S.D.N.Y. 1978) (Gagliardi, J.); *see also Blum*, 457 U.S. at 1012, 102 S. Ct. at 2790 (nursing homes not deemed state actors under public function test even where federal funds were utilized); *Sybalski*, 546 F.3d at 259  (holding the public function test was not met in as much as the care for the mentally disabled was neither traditionally nor exclusively reserved to the state).  Plaintiffs fail to plead that Defendants' conduct constituted action that is typically reserved for the state. Therefore, the public function test is not satisfied.

Notably, the Complaint does not attempt to assert that Defendants can be classified as anything other than private entities. Plaintiffs do not allege that the hospital has received state funds, nor that the state controls the decision-making of the hospital, or its social workers. Plaintiffs allege (vaguely and in a conclusory manner) only that Defendants acted pursuant to their own (highly improbable) internal policy or practice "of removing and detaining children from parents who did not abuse, neglect, or endanger the children, without probable cause, without due process of law, and without constitutionally adequate investigations." Compl. ¶ 102; *see also* ¶103. This, without more, does not carry Plaintiff's burden of pleading Defendants were state actors or acted under color of state law and therefore their §1983 claim fails.

### B.    Plaintiffs Do Not Adequately Plead Deprivation of a Constitutional Right

The federal claim should also be dismissed because Plaintiffs fail to allege that Defendants' conduct deprived them of a Constitutional right. "[A] complaint containing only conclusory, vague, or general allegations" that defendants deprived plaintiffs "of constitutional rights cannot withstand a motion to dismiss." *See Maier v. Phillips*, 205 F.3d 1323 (2d Cir. 2000) (internal citation and quotation omitted). A plaintiff must detail what the defendant did by describing *specific* facts instead of conclusory allegations. *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 355 (S.D.N.Y. 2000) (Marrero, J.) ("Conclusory allegations cannot sustain a §1983 claim, which requires specific facts under which a court could grant relief"); *see EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 274 (S.D.N.Y. 2004) (Sweet, J.) ("purely conclusory allegations [do not] suffice…even under [Rule 8(a)'s] liberal notice pleading standard") (citation and quotation omitted).  As established above, Deleon's report to ACS cannot be the basis for a §1983 claim, therefore Plaintiffs must sufficiently allege that the alleged "detainment" of L.W. deprived Plaintiffs of a constitutional right.  Plaintiffs do not meet this burden.

9

1.     Plaintiffs do not sufficiently allege violation of a civil right by detainment.

The crux of Plaintiffs' §1983 claim is that after making a report to ASC that Walston endangered L.W., Defendants "detain[ed]" L.W., (Compl. ¶ 21), and then somehow removed L.W. "from Plaintiff's custody and took [her] into the custody of Montefiore." *Id.* ¶ 58; *see also* ¶¶ 55-61.  Plaintiffs baldly allege that Defendants "prohibited [Walston] from taking [L.W.] from the hospital." *Id.* ¶ 61.  Plaintiffs provide no details of the manner and length of any alleged detention. Plaintiffs have not pled any constitutional violation other than conclusory allegations made solely on information and belief.  *See, e.g.*, *id*. ¶¶ 102-104. The Complaint merely charges that Defendants "[upon] information and belief ... had a policy and/or practice of removing and detaining children from parents who did not abuse, neglect or endanger the children." *Id.* ¶¶ 102-103.  Such a policy or practice is implausible.

Plaintiffs provided no support for the conclusory statement, which wholly fails to "raise the right to relief above the speculative level" and therefore cannot survive a motion to dismiss. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.  Although the court must accept all well-pleaded allegations as true, "the court need not accept threadbare recitals of the elements of a cause of action, which are essentially legal conclusions." *Premium Sports, Inc. v. Mendes*, No. 17CV1309PKCCLP, 2018 WL 2078488, at *1 (E.D.N.Y. Mar. 1, 2018) adopted, Order (E.D.N.Y. Mar. 16, 2018) (citing *S.E.C. v. One or More Unknown Traders in Secs. of Onyx Pharm., Inc*., 296 F.R.D. 241, 247 (S.D.N.Y. 2013) (Oetken, J.) (citation and quotation omitted); *see also Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory"); *Michael E. Jones M.D., P.C. v. UnitedHealth Grp., Inc*., No. 19-CV-7972, 2020 WL 4895675, at *2 (S.D.N.Y. Aug. 19, 2020) (Caproni, J.) ("Allegations premised on 'information and belief' must

be supported by specific facts and cannot be accepted at face-value); *Calcano v. Vineyard Vines, LLC*, No. 19 CIV. 11228, 2020 WL 3318100, at *2 (S.D.N.Y. June 18, 2020) (Schofield, J.) (granting motion to dismiss and finding "upon information and belief" assertion "insufficient because it is conclusory and unsupported by any allegations of fact").

This pleading defect is compounded and contradicted by the allegation that when ACS arrived at Montefiore, L.W. was in Walston's arms, which begs the question of whether L.W. was ever detained by Defendants at all. *See* Compl. ¶ 72; ¶ 1"[T]he City of New York snatched *L.W. from Ms. Walston's care*…. The City forcibly took *L.W. from Ms. Walston*…." (emphasis added). Accepting these allegations, L.W. was in Walston's care, not Defendants' custody, before ACS arrived at the hospital.

2.    A change in discharge does not amount to a civil rights violation.

Plaintiffs supply no information for their vague allegation that the hospital planned to but did not discharge L.W.  A medical discharge acts as the line in the sand between a hospital's conduct as a private actor and its conduct as a state actor. *See Kia P*. at 751.  Unlike in *Kia P*., where the hospital medical staff provided medical clearance for discharge prior to the social worker calling CWA, here it is not obvious from the face of the Complaint whether L.W. was cleared for discharge. *See, e.g.,* Compl. ¶ 2 ("Montefiore was ready to discharge L.W."); ¶ 3 ("Th[e] discharge plan abruptly changed…"); ¶ 61 (Defendants "cancel[ed] the previously planned discharge of Infant Plaintiff").

Changing a plan of discharge does not amount to deprivation of a constitutional right. Alleging a change in discharge plan is analogous to cases in which medical personnel were not liable for §1983 claims for involuntary psychiatric commitment.  Courts in this circuit have uniformly concluded that a private hospital or doctor cannot have §1983 liability for carrying out

involuntary psychiatric commitments.  *See McGugan v. Aldana-Bernier*, 752 F.3d 224 (2d Cir. 2014) (affirming grant of dismissal and finding no state action where New York "endowed Defendants with the authority to involuntarily hospitalize"); *Kaplan*, 528 F. Supp. 3d 141 (granting motion to dismiss); *Doe v. Harrison*, 254 F. Supp. 2d 338 (S.D.N.Y. 2003) (Stein, J.) (granting motion to dismiss).

## II.    Deleon is not Subject to Liability for the §1983 Claim Because of Qualified Immunity and Montefiore Cannot Be Held Responsible Under a Theory of *Respondeat Superior* for Deleon's Alleged Conduct

Plaintiffs' §1983 claim should be dismissed for the additional reason that Deleon is protected by qualified immunity.  Under New York Social Services Law §413, social workers like Deleon are required to report cases "when they have reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child." Social Services Law §419, provides, as relevant, immunity to those individuals, including social workers, who make a good faith reporting of child abuse. N.Y. Soc. Serv. Law §419.

Courts employ a deliberately "forgiving" standard of review in assessing whether qualified immunity shields a defendant from liability.  *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013).  The purpose of qualified immunity is to provide "'ample protection to all but the plainly incompetent or those who knowingly violate the law.'"  *Id.*  (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986)).  Immunity will be denied only upon a showing that the medical professional engaged in willful misconduct or gross negligence. *See Rine v. Chase*, 309 A.D.2d 796, 798 (2d Dept 2003) (noting that despite the fact reports made by mandated reporter were ultimately determined to be unfounded, "[m]andated reporters need not await conclusive evidence of abuse or maltreatment but must act on their reasonable suspicions and the law allows them a degree of latitude to err on the side of protecting children who may be suffering from abuse") (internal citation omitted); *Kempster v. Child Protective Servs. of Dep't of*

*Soc. Servs. of Suffolk Cnty.*, 130 A.D.2d 623, 625 (2d Dept. 1987) ("The reporting requirements which trigger the qualified immunity provision contained in Social Services Law §419 are not predicated upon actual or conclusive proof of abuse or maltreatment. Rather, immunity attaches when there is reasonable cause to suspect that the infant might have been abused and when the party so reporting has acted in good faith in discharging the obligations and duties imposed by the statute").

Plaintiffs' vague allegation that Deleon acted "because of a racial animus toward Black mothers," Compl. ¶ 104, is unsupported other than conjecture that Deleon acted on a stereotype of Black women as "angry" and "aggressive." *Id.* ¶ 54. This is plainly insufficient to prove willful misconduct or gross negligence. These unsubstantiated assertions do not establish that Deleon did not act on "reasonable suspicions" based on her professional expertise, interactions with the patient and the patient's history, but are a subjective and conclusory interpretation of Deleon's motivation in making a report. Given that the law provides mandatory reporters with a degree of latitude to err on the side of protecting children, it cannot be said that Deleon's actions were outside the bounds of conduct protected by qualified immunity.

In light of Deleon's immunity, it would be futile to allow leave to amend the Complaint. *See Grullon v. City of New Haven*, 720 F.3d 133, 114 (2d Cir. 2013) ("Leave to amend may properly be denied if the amendment would be 'futil[e].'") (*quoting Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962)); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Even if Plaintiffs were granted leave to amend to assert that Defendants' actions constituted state action, the amendment would be futile as to Montefiore being responsible for Deleon's conduct. *See Brown v. City of New York*, No. 09 CIV 6834, 2010 WL 3565171, at *5 (S.D.N.Y. Mar. 2, 2010) (Francis IV, M.J.), *report and recommendation adopted*, No. 09 CIV 6834, 2010

13

WL 3582668 (S.D.N.Y. Sept. 13, 2010) (Kaplan, J.) ("private employers are not vicariously liable under §1983 for the constitutional torts of their employees under a theory of *respondeat superior*") (internal citations omitted). While a private corporation could be held liable under §1983 for its own unconstitutional policies" *Fisk v. Letterman*, 401 F. Supp. 2d 362, 375 (S.D.N.Y. 2005) (Marrero, J.), to survive a motion to dismiss, Plaintiffs must allege that defendants took "action pursuant to official…policy of some nature [that] caused a constitutional tort." *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (citation and quotation omitted). Without providing details of Montefiore's alleged unconstitutional private policies on "removing and detaining children from parents who did not abuse, neglect or endanger the children," Plaintiffs are unable to maintain their claim.

### III.    Plaintiffs' False Imprisonment Claim is Untimely and Should Be Dismissed

Plaintiffs allege that Deleon, and Montefiore, under a theory of *respondeat superior*, falsely imprisoned L.W. while awaiting the arrival of ACS and as a result of said confinement, Plaintiffs suffered damages. Compl. ¶¶ 145, 147-151.

"To establish a cause of action for false imprisonment pursuant to New York law, a plaintiff must show that: (1) the defendant intended to confine [her], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Doe v. Alsaud*, 224 F. Supp. 3d 286, 295 (S.D.N.Y. 2016) (Sweet, J.) (citation and quotation omitted). The "New York limitations period[] [is]…one year for intentional torts, including…false imprisonment…." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 171 (S.D.N.Y. 2019) (Hellersetin, J.); *Mitchell v. Home*, 377 F. Supp. 2d 361, 377 (S.D.N.Y. 2005) (McMahon, J.) ("The statute of limitations for state law false arrest or false imprisonment, an intentional tort, is one year") (citing CPRL 215(3)).

Even if Plaintiffs sufficiently pled (or could plead) any facts demonstrating that Defendants intended to confine the two-day old L.W., who was "conscious of [her] confinement" and "did not consent to the confinement," Plaintiffs' claim must be dismissed because it is barred by the applicable statute of limitations.   Any alleged false confinement of L.W. by Montefiore occurred in late November 2019 (Compl. ¶¶ 50-51, 58, 65), and a cause of action for false imprisonment accrues at the time of confinement.  Plaintiffs, therefore, had until late November 2020[1] to assert this claim but they filed the Complaint on November 23, 2022.  Dkt No. 1.  Consequently, this claim must be dismissed.

## IV. The State Law Claims Should Be Dismissed

### A. Plaintiffs' Remaining State Law Claims Are Duplicative, Lack Merit And Should be Dismissed

1. The negligence claims should be dismissed.

The Negligence and Negligent Infliction of Emotional Distress claims should be dismissed based upon their inherent duplicative nature of the federal claim.  These claims are premised on the same conduct Plaintiffs base their §1983 claim on, *compare id.* ¶¶ 102, 104, 113-15 *with id.* ¶¶ 139-44, 153-55 and therefore should be dismissed.  *See Sussman Sales Co., Inc. v. VWR Int'l, LLC*, No. 20 CIV. 2869, 2021 WL 6065760, at *6 (S.D.N.Y. Dec. 21, 2021) (Failla, J.) (denying appeal under Fed. R. Civ. P. 54(b) where dismissed claims at issue were all "based upon conduct relating to…surviving claims").

These claims should also be dismissed because the Complaint does not allege facts that satisfy the elements of either claim. To state a cause of action for negligence, a plaintiff must

---

[1] This claim is not subject to tolling under former Governor Cuomo's Executive Orders in response to the Covid-19 pandemic.  Executive Order 202.8 was extended by successive orders which were in effect for only a total of 228 days, from March 20, 2020 until November 3, 2020.  Because the statute of limitations for this claim accrued after the expiration of the Executive Orders, Plaintiffs' claim does not benefit from the 228-day tolling extension and thus is time barred.

demonstrate "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty, and (3) injury to the plaintiff as a result thereof." *Ilkowitz v. Durand*, No. 17 CIV. 773, 2018 WL 1595987, at *12 (S.D.N.Y. Mar. 27, 2018) (Gardephe, J.) (citation and quotation omitted). Instead of pleading facts that illustrate how Defendants acted negligently, Plaintiffs merely recite the elements of a claim for negligence, "Defendants had a duty to act with reasonable care toward [Walston] to act with a high degree of care toward [L.W.] …. Defendants' actions alleged herein constitute a gross breach of said duty and a gross deviation from accepted professional standards. As a direct and proximate result of Defendants' actions, [Plaintiffs] suffered the damages herein alleged." Compl. ¶¶ 140-42. It is unclear from the face of the Complaint what duty was owed to Walston and L.W., how Defendants breached said duty and how that breach resulted in alleged damages. Therefore, the Negligence claim should be dismissed.

To recover for a claim of negligent infliction of emotional distress under New York law, a plaintiff must establish (1) a breach of a duty owed to plaintiff, which breach either unreasonably endangered plaintiff's physical safety or caused plaintiff to fear for his physical safety; (2) extreme and outrageous conduct; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 77 (S.D.N.Y. 2016) (Furman, J.) (citation and quotation omitted). The Complaint contains no allegations detailing how Plaintiffs' physical safety was endangered or how either of them feared for their physical safety because of Defendants' conduct; no allegations of extreme or outrageous conduct, *see id.* at 78 (noting "[c]onduct must have been so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency,"); and no facts explaining how the alleged conduct results in severe emotional distress.[2]  Consequently this claim should be dismissed.

2.      The interference with child custody claim should be dismissed.

Plaintiffs' claim for Interference with Child Custody is also insufficiently plead.  This infrequently invoked cause of action requires an intentional or willful wrongful deprivation or detention of a child by an institution having custody of the child.  *Sager v. Rochester Gen. Hosp.*, 169 Misc. 2d 643 (Sup. Ct. Monroe County 1996) (dismissing action against hospital based on lack of willful interference and immunity from civil liability).  For the reasons explained in Section I.B., *supra*, Plaintiffs do not sufficiently allege a willful deprivation or detention of L.W. by Defendants.

**B.      The Court Should Decline To Exercise Pendent Jurisdiction Over the State Law Claims**

Upon dismissal of the federal claim against Defendants, there is no federal question jurisdiction (or diversity), and this Court should decline to exercise supplemental jurisdiction over the state law claims.  *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.' 28 U.S.C. § 1367(c)(3)"); *Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims").

---

[2] L.W. was two days old at the time of Defendants' alleged conduct.  Plaintiffs' contention that L.W. was aware of what allegedly happened to her and that she "suffered humiliation, pain and suffering, terror and mental anguish" (Compl. ¶ 155), cannot reasonably be credited.

## **<u>CONCLUSION</u>**

For the reasons stated here, Defendants respectfully request dismissal of this action, with

prejudice.

Dated: New York, New York                                                    Respectfully submitted
       February 20, 2023


                                                 By: */s/*_____
                                                 Jolie Apicella
                                                 Chloe Booth
                                                 WIGGIN AND DANA LLP
                                                 437 Madison Avenue, Floor 35
                                                 New York, NY 10022
                                                 P: (212) 551-2844
                                                 F: (212) 551-2888
                                                 japicella@wiggin.com
                                                 cbooth@wiggin.com


                                                 *Counsel for Defendants Montefiore*
                                                 *Medical Center and Carmen Deleon*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 20, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filings.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jolie Apicella*
Jolie Apicella

19